FILED

JUN 15 2015

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| LIBERTARIAN PARTY OF SOUTH DAKOTA; KEN SANTEMA, State Chair of the Libertarian Party of South Dakota; BOB NEWLAND; CONSTITUTION PARTY OF SOUTH DAKOTA; LORI STACEY, State Chair of the Constitution Party of South Dakota; JOY HOWE;<br><br>Plaintiffs,<br><br>v.<br><br>SHANTEL KREBS, in her official capacity as Secretary of State of the State of South Dakota; and MARTY J. JACKLEY, in his official capacity as Attorney General of the State of South Dakota,<br><br>Defendants. | Civ. No. 15-4111<br><br>COMPLAINT FOR DECLARATORY<br><br>AND INJUNCTIVE RELIEF |

## Introduction

The United States Supreme Court has repeatedly recognized that "third" or "minor" political parties have played an important role in US history by advancing ideas that the major parties often later adopted. In addition, third parties perform two functions essential to the vitality of our democracy by protecting the right of citizens to associate to promote political beliefs, and by protecting "the right of qualified voters, regardless of their political persuasion, to cast their votes effectively. Both of these rights, of course, rank among our most precious freedoms." *Anderson v. Celebrezze*, 460 U.S. 780, 787 (1983) (internal citation omitted). South Dakota, however, has enacted a number of severe and unnecessary barriers to third-party access to the ballot, one of which is challenged in this lawsuit.

This is an action under 42 U.S.C. § 1983 to enforce rights guaranteed to the Plaintiffs by the First and Fourteenth Amendments to the United States Constitution. At issue is South Dakota's recently amended ballot-access law, SB 69, which requires a new or newly-qualifying political party that seeks to organize and participate in South Dakota elections to submit a written petition (containing a certain number of qualified signatures) to the Secretary of State *no later than the first Tuesday of March* prior to the date of the primary election. This exceedingly early deadline is patently unconstitutional. Indeed, South Dakota's deadline is nineteen days earlier than the Ohio deadline found to be too early in *Anderson v. Celebrezze*. Early deadlines such as South Dakota's are unreasonable and stifling because they require new or newly-qualifying political parties to organize and obtain signatures months before the major political parties have selected their candidates and chosen their platforms, and thus months before most voters are likely to be drawn to minor parties. By the time voter dissatisfaction has grown to the level where it could support minor parties, it is too late in South Dakota for those parties to place a candidate on the ballot. Therefore, early deadlines such as the one codified in SB 69 are anti-democratic and discriminate against those candidates and their supporters who wish to participate meaningfully in the electoral process. Plaintiffs seek declaratory and injunctive relief prohibiting the Defendants from enforcing this unconstitutional ballot-access deadline.

## Jurisdiction and Venue

1. This Court has original jurisdiction over this case pursuant to Article III of the United States Constitution and 28 U.S.C. §§ 1331 and 1343(a)(3) and (4).

2. This suit is authorized by 42 U.S.C. § 1983.

3. Declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202, and Rule 65 of the Federal Rules of Civil Procedure.

4. Venue is proper in the District of South Dakota pursuant to 28 U.S.C. § 1391(b).

## Parties

5. Plaintiff Libertarian Party of South Dakota is a political organization that believes in minimum government and maximum personal freedom that is peaceful and honest. It desires its candidates for president and other partisan public offices, and its members, to participate effectively in elections in South Dakota.

6. Plaintiff Ken Santema is a resident and registered voter of South Dakota and the Chair of the Libertarian Party of South Dakota. He desires to vote for candidates of the Libertarian Party of South Dakota and to participate effectively in elections in South Dakota.

7. Plaintiff Bob Newland is a resident and registered voter of South Dakota and a member of the Libertarian Party of South Dakota. He desires to vote for candidates of the Libertarian Party of South Dakota and to participate effectively in elections in South Dakota.

8. Plaintiff Constitution Party of South Dakota is a political organization committed to enforcing the Declaration of Independence, the Constitution of the United States, and the Bill of Rights. It desires its candidates for president and other partisan public offices, and its members, to participate effectively in elections in South Dakota.

9. Plaintiff Lori Stacey is a resident and registered voter of South Dakota and is the State Chair of the Constitution Party of South Dakota. She desires to vote for candidates of the Constitution Party of South Dakota and to participate effectively in elections in South Dakota.

10. Plaintiff Joy Howe is a resident and registered voter of South Dakota. She desires to have the option of voting for candidates of the Constitution Party of South Dakota and to participate effectively in elections in South Dakota.

11. Defendant Shantel Krebs is the Secretary of State of South Dakota and is charged by state statute with enforcing South Dakota's ballot-access laws. She is sued in her official capacity only.

12. Defendant Marty J. Jackley is the Attorney General of the State of South Dakota and his duties include enforcing and defending the laws of the State of South Dakota. He is sued in his official capacity only.

Factual Allegations

13. On or about March 30, 2015, the Governor of South Dakota signed into law SB 69, which amended SDCL Section 12-5-1. The amended § 12-5-1 provides: "A new political party may be organized and participate in the primary election by submitting to the secretary of state not later than the first Tuesday of March at five p.m. prior to the date of the primary election, a written declaration signed by at least two and one-half percent of the voters of the state shown by the total vote cast for Governor at the last preceding gubernatorial election." Pursuant to SDCL § 2-14-16, SB 69 is scheduled to go into effect on July 1, 2015.

14. Prior to the amendment, Section 12-5-1 allowed a new political party to participate in the general election in November by submitting a written petition to the secretary of state not later than the last Tuesday of March prior to the date of the primary election. Thus, the amended law reduces the deadline for submitting a signed petition by four weeks.

15. Primary elections in South Dakota are held "on the first Tuesday after the first Monday in June of every even-numbered year." SDCL § 12-2-1. As a result of South Dakota's amended law, a new political party will be unable to participate in the 2016 primary *or* the general election unless it submits a written petition containing the required number of signatures

4

to the Secretary of State some 98 days before the primary election.[1]

16. In South Dakota, a new party that gets on the ballot during a presidential year (such as 2016) is allowed to remain on the ballot for the following midterm election.

17. Plaintiff Libertarian Party of South Dakota appeared on the South Dakota ballot as a qualified party in 1994, 1996, 1998, 2000, 2002, 2004, 2006, 2012, and 2014. Plaintiff Constitution Party of South Dakota appeared on the South Dakota ballot as a qualified party in 2004, 2006, 2008, 2010, 2012, and 2014. Both Parties got on the South Dakota ballot in all the years listed above because they submitted petitions during presidential election years.

18. No new or previously unqualified party has successfully petitioned in South Dakota in a midterm year, ever.

19. In the 2014 statewide election for School Superintendent, the Libertarian Party's candidate, John English, in a contest with only a Republican Party opponent, got 53,836 votes, 23.55% of the total votes cast.

20. In the 2014 statewide election for Public Service Commissioner, the Constitution Party's candidate, Wayne Schmidt, in a contest with Republican Party and Democratic Party opponents, got 12,642 votes, 4.95% of the total votes cast.

21. Both Plaintiff Libertarian Party of South Dakota and Plaintiff Constitution Party of South Dakota want to be on the general election ballot in 2016 in South Dakota.[2]

---

[1] SDCL § 12-5-1 requires that the petition be "signed by at least two and one-half percent of the voters of the state shown by the total vote cast for Governor at the last preceding gubernatorial election." That is an exceedingly high number of signatures, third highest in the Nation. Plaintiffs are not directly challenging the signature requirement in this lawsuit, however, but this burden should be taken into account when determining the reasonableness of the deadline for gathering those signatures.

[2] Pursuant to SDCL § 12-6-9, a candidate for nomination to an office having no opposing candidate within his or her party automatically becomes the nominee of the party, and his or her name is not then printed on the primary ballot.

5

22. Minor political parties, including both the Libertarian Party of South Dakota and the Constitution Party of South Dakota, raise most of their financial support from contributors during presidential years, and after the worst winter months are over and the election draws nearer. The effect of the earlier deadline for submitting petitions will be substantially to reduce the opportunities for fund raising by these parties, and significantly burden and jeopardize their opportunity to appear on the 2016 general election ballot in South Dakota.

23. The amended deadline for new political parties to submit petitions requires them to gather signatures long before the nominees of the major parties are determined, *i.e.*, well prior to the time when voters may be looking for alternatives to the major party candidates.

24. The fact that South Dakota's new deadline is oppressive and unnecessarily burdensome is evidenced by the fact that South Dakota's deadline for a new or previously unqualified party to qualify to place its presidential candidates on the general election ballot with the party label is the earliest in the nation (except that it is tied with Alabama). Indeed, two-thirds of the states do not require a new party to qualify for the presidential ballot until *after* the major parties have selected their candidates in primary elections, whereas South Dakota requires that new or unqualified parties submit a petition some 98 days *before* the primary.[3] As the Eighth Circuit stated on this point: "It is completely unreasonable and unrealistic for a state to provide by statute that a person cannot get his name on the party's presidential ballot as a third party candidate unless that party has qualified as a party in advance of the primary elections and at a time when the individual's candidacy itself is purely potential and contingent upon

---

[3] Some states have more than one method by which a new party may qualify for the ballot, and some of those alternative methods have different deadlines. For purposes of the comparison noted here, whenever there were alternative methods with different deadlines, the method with the later deadline was used.

6

developments that may occur months later." *MacBride v. Exon*, 558 F.2d 443, 449 (8th Cir. 1977).

25. South Dakota's new deadline to submit petitions imposes severe and unjustified burdens for new or newly-qualifying *political parties* seeking to participate in South Dakota elections. It also imposes severe and unjustified burdens on *voters* who wish to vote for the candidates of those parties in South Dakota elections.

26. Each of the two Plaintiff Parties fully intends to nominate a presidential candidate. However, they will almost surely be prevented from having that person and the parties appear on South Dakota's general election ballot due to the operation and effect of the new petition deadline.

27. A real and actual controversy exists between the parties.

28. Plaintiffs have no adequate remedy at law. Efforts were made to dissuade the Legislature from enacting SB 69 on the grounds that the new deadline would be unreasonable and oppressive, but SB 69 was enacted anyway.

29. Plaintiffs will suffer irreparable harm unless the amended law is declared unlawful and enjoined by this Court.

## Claim for Relief

30. South Dakota's amended deadline set forth in SDCL Section 12-5-1 for new political parties to submit signed petitions seeking to participate in South Dakota elections violates rights guaranteed to the Plaintiffs by the First and Fourteenth Amendments to the United States Constitution, as enforced by 42 U.S.C. § 1983.

## Relief

WHEREFORE, Plaintiffs respectfully pray that this Court will:

(1) take original jurisdiction over this case;

(2) enter a declaratory judgment that South Dakota's amended deadline set forth in SDCL Section 12-5-1 for new political parties to submit signed petitions seeking to organize and participate in South Dakota elections violates rights guaranteed to the Plaintiffs by the First and Fourteenth Amendments to the United States Constitution, as enforced by 42 U.S.C. § 1983;

(3) enjoin the Defendants from enforcing South Dakota's amended deadline for new political parties to submit signed petitions seeking to organize and participate in elections;

(4) order the Defendants, until such time as the South Dakota Legislature enacts a constitutionally adequate law, to provide that a new or newly-qualifying political party can be organized and participate in (a) the *primary* election by submitting the requisite petition to the Secretary of State not later than March 29 prior to the primary election, or (b) the *general* election by submitting the requisite petition not later than August 1 prior to the general election, similar to the system established by Nebraska following *MacBride v. Exon, see* N.R.S. 32-716 (creating a February 1 deadline for a party seeking to participate in the state's second-Tuesday-in May primary, and an August 1 deadline for a party desiring to participate in the general election but not in the primary);[4]

(5) award the Plaintiffs the costs of this action together with their reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and 52 U.S.C. § 10310*l*(e); and

(6) retain jurisdiction of this action and grant the Plaintiffs any further relief which may in the discretion of this Court be necessary and proper.

---

[4] Participating in a primary election is necessary, of course, only when a political party is fielding more than one candidate for an office. Often, minor political parties, such as Plaintiffs here, have no need to participate in a primary because they only have one candidate per office. It is therefore appropriate to have two ballot-access deadlines, one for a party that wants to participate in the state's primary, and one for a party that only wishes to participate in the general election.

8

Respectfully submitted,

/s/ M. Laughlin McDonald
M. Laughlin McDonald*
American Civil Liberties Union Foundation
2700 International Tower
229 Peachtree Street, NE
Atlanta, GA 30303
T/404-500-1235
F/404-565-2886
Lmcdonald@aclu.org


/s/ Stephen L. Pevar
Stephen L. Pevar
American Civil Liberties Union Foundation
330 Main Street, 1st Fl.
Hartford, CT 06106
T/860-570-9830
F/860-570-9840
spevar@aclu.org


Brendan V. Johnson
Robins Kaplan, LLP
101 S. Main Street, Suite 100
Sioux Falls, South Dakota 57104
T/605-335-1300
F/612/339-4181
Bjohnson@robinskaplan.com

*Attorneys for Plaintiffs*


*McDonald's appearance is pending the disposition of his motion to appear pro hac vice.