IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| LIBERTARIAN PARTY OF SOUTH DAKOTA; KEN SANTEMA, State Chair of the Libertarian Party of South Dakota; BOB NEWLAND; CONSTITUTION PARTY OF SOUTH DAKOTA; LORI STACEY, State Chair of the Constitution Party of South Dakota; JOY HOWE, Secretary of the Constitution Party of South Dakota, <br><br> Plaintiffs, <br><br> v. <br><br> SHANTEL KREBS, in her official capacity as Secretary of State of the State of South Dakota; and MARTY J. JACKLEY, in his official capacity as Attorney General of the State of South Dakota, <br><br> Defendants. | Civ. No. 15-4111-KES <br><br><br><br><br><br> SECOND AMENDED COMPLAINT <br><br> FOR DECLARATORY AND <br><br> INJUNCTIVE RELIEF |

Introduction

The United States Supreme Court has repeatedly recognized that "third" or "minor" political parties have played an important role in U.S. history by advancing ideas that the major parties often later adopted. In addition, third parties perform two functions essential to the vitality of our democracy by protecting the right of citizens to associate to promote political beliefs, and by protecting "the right of qualified voters, regardless of their political persuasion, to cast their votes effectively. Both of these rights, of course, rank among our most precious freedoms." *Anderson v. Celebreeze*, 460 U.S. 780, 787 (1983) (internal citations omitted). South Dakota, however, has enacted severe and unnecessary barriers to third party access to the

1

ballot. This is an action under 42 U.S.C. § 1983 challenging those ballot access laws and to enforce rights guaranteed to the Plaintiffs by the First and Fourteenth Amendments to the United States Constitution.

## Jurisdiction and Venue

1. This Court has original jurisdiction over this case pursuant to Article III of the United States Constitution and 28 U.S.C. §§ 1331 and 1343(a)(3) and (4).

2. This suit is authorized by 42 U.S.C. § 1983.

3. Declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202, and Rule 65 of the Federal Rules of Civil Procedure.

4. Venue is proper in the District of South Dakota pursuant to 28 U.S.C. § 1391(b).

## Parties

5. Plaintiff Libertarian Party of South Dakota is a political organization that believes in minimum government and maximum personal freedom that is peaceful and honest. It desires its candidates for president and other partisan public offices, and its members, to participate effectively in elections in South Dakota.

6. Plaintiff Ken Santema is a resident and registered voter of South Dakota and the Chair of the Libertarian Party of South Dakota. He desires to vote for candidates of the Libertarian Party of South Dakota and to participate effectively in elections in South Dakota.

7. Plaintiff Bob Newland is a resident and registered voter of South Dakota and a member of the Libertarian Party of South Dakota. He desires to vote for candidates of the Libertarian Party of South Dakota and to participate effectively in elections in South Dakota.

8. Plaintiff Constitution Party of South Dakota is a political organization committed to enforcing the Declaration of Independence, the Constitution of the United States, and the Bill of

Rights.  It desires its candidates for president and other public offices, and its members. to participate effectively in elections in South Dakota.

9.  Plaintiff Lori Stacey is a resident and registered voter of South Dakota and is the State Chair of the Constitution Party of South Dakota.  She desires to vote for candidates of the Constitution Party of South Dakota and to participate effectively in elections in South Dakota.

10.  Plaintiff Joy Howe is a resident and registered voter of South Dakota and the Secretary of the Constitution Party of South Dakota.  She desires to vote for candidates of the Constitution Party of South Dakota and to participate effectively in elections in South Dakota.

11.  Defendant Shantel Krebs is the Secretary of State of South Dakota and is charged by statute with enforcing South Dakota's ballot-access laws.  She is sued in her official capacity only.

12.  Defendant Marty J. Jackley is the Attorney General of the State of South Dakota and his duties include enforcing and defending the laws of the State of South Dakota.  He is sued in his official capacity only.

Factual Allegations

13.  Plaintiffs filed their initial complaint on June 15, 2015, challenging the constitutionality of SB 69, which had been recently signed by the Governor.  Docket 1.  SB 69 sought to amend SDCL 12-5-1 to provide that: "A new political party may be organized and participate in the primary election by submitting to the secretary of state not later than the first Tuesday of March at five p.m. prior to the date of the primary election, a written declaration signed by at least two and one-half percent of the voters of the state shown by the total vote cast for Governor at the last preceding gubernatorial election."

14. In contrast, Section 12-5-1 set a filing deadline of not later than the last Tuesday of March prior to the date of the primary election. Thus, SB 69 would shorten by four weeks the deadline for submitting a declaration by a new party.

15. A supported petition for referendum, however, was filed with the Secretary of State regarding SB 69 on June 29, 2015. Docket 9 at 2-3. As a result, SB 69 has not gone into effect and will be subject to a popular vote in the November 2016 election, with its enforcement held in abeyance until then.

16. After SB 69 was effectively tabled, plaintiffs obtained leave of the court to file an amended complaint challenging the constitutionality of SDCL 12-5-1 as presently written. Docket 19.

17. Primary elections in South Dakota are held "on the first Tuesday after the first Monday in June of every even-numbered year." SDCL 12-2-1. Thus, as a result of SDCL 12-5-1, a new political party is unable to participate in either the primary or general elections unless it submits a written declaration to the Secretary of State containing the requisite number of signatures more than two months before the primary election.

18. In South Dakota, a new party that gets on the ballot during a presidential year is allowed to remain on the ballot for the following midterm election.

19. Plaintiff Libertarian Party of South Dakota has appeared on the South Dakota ballot as a qualified party in 1994, 1996, 1998, 2000, 2002, 2004, 2006, 2012, and 2014.

20. In the 2014 statewide election for School Superintendent, the Libertarian Party's candidate, John English, in a contest with only a Republican Party opponent, garnered 53,836 votes, 23.55% of the total votes cast.

21. Plaintiff Constitution Party of South Dakota has appeared on the South Dakota ballot

as a qualified party in 2004, 2006, 2008, 2010, 2012, and 2014.

22. In the 2014 statewide election for Public Service Commissioner, the Constitution Party's candidate, Wayne Schmidt, in a contest with Republican Party and Democratic Party opponents, garnered 12,642 votes, 4.95% of the total votes cast.

23. Both the Libertarian Party of South Dakota and the Constitution Party of South Dakota got on the ballot in all the years listed above for elections in South Dakota because they submitted declarations during presidential election years.

24. No new or previously unqualified party has successfully gotten on the ballot in a midterm year in South Dakota by submitting a petition.

25. Both Plaintiff Libertarian Party of South Dakota and Plaintiff Constitution Party of South Dakota wanted to be on the ballot for the 2016 general election in South Dakota. In an effort to do so, both parties submitted petitions containing the required numbers of signatures. However, these petitions were approved *after* the March 29 deadline.

25. Minor political parties, including both the Libertarian Party of South Dakota and the Constitution Party of South Dakota, raise most of their financial support from contributors during presidential years and after the worst winter months are over and the election draws nearer. South Dakota's early deadline for submitting petitions substantially reduces the opportunities for fund raising by these parties, and significantly burdens and jeopardizes their opportunity to appear on the general election ballot in South Dakota.

26. South Dakota's early deadline for new political parties to submit petitions requires them to gather signatures long before the nominees of qualified parties are determined. As the Eighth Circuit has stated on this subject: "It is completely unreasonable and unrealistic for a state to provide by statute that a person cannot get his name on the state's presidential ballot as a third

5

party candidate unless that party has qualified as a party in advance of primary elections and at a time when the individual's candidacy itself is purely potential and contingent upon developments that may occur later." *MacBride v. Exon*, 558 F.2d 443, 449 (8th Cir. 1977).

27. South Dakota's deadline for new political parties to submit declarations imposes severe and unjustified burdens on new political parties.

28. South Dakota's deadline for new political parties to submit declarations imposes severe and unjustified burdens on voters who wish to vote for candidates of new political parties by making it unnecessarily difficult for those candidates to access the ballot.

29. Moreover, it is unreasonable and illogical for South Dakota to require new parties and their candidates to submit petitions long before primary elections. After all, rarely (if ever) does a new party field more than one candidate per office, and thus new parties have no need to engage in a primary election to select among competing candidates.

30. Primary elections are unnecessary for new parties. Thus, it makes no sense to force them to participate in one or to link the filing of their petitions to the date of South Dakota's primary election.

31. Upon information and belief, every Secretary of State within at least the past 25 years until now interpreted SDCL § 12-5-1 as limiting a new party to just one method by which it could place a candidate on the November general election ballot for *any* office: the party had to comply with that statute's March deadline.

32. In their answer to plaintiffs' amended complaint, however, defendants state that there is, in fact, a second method to obtain ballot access, at least for certain candidates. Docket 43 at 3. According to defendants: "New political parties are not precluded from organizing and nominating candidates at a state convention as provided in SDCL §12-5-21." Docket 21, ¶ 7.

33. SDCL § 12-5-21 provides: "The state convention shall nominate candidates for lieutenant governor, attorney general, secretary of state, state auditor, state treasurer, commissioner of school and public lands, and public utilities commissioner and in the years when a President of the United States is to be elected, presidential electors and national committeeman and national committeewoman of the party." Defendants stated in their answer that: "Applying these dates to the 2016 calendar, the last possible date a new political party could file a written declaration pursuant to SDCL 12-5-1 [for the offices listed in 12-5-21] is July 11, 2016." Docket 21, ¶ 7.

34. Thus, defendants now interpret state law as creating two sets of candidates, with one set having to satisfy a far more onerous filing deadline than the other. Political parties are allowed to select candidates for the eight offices listed in SDCL § 12-5-21 at the party's convention in August, and the party can wait until July 11 to file its 6,936 signatures for those offices. But for all other candidates, including candidates for U.S. House, U.S. Senate, State House, State Senate, and Governor, the party must file its 6,936 signatures by the March deadline set forth in SDCL 12-5-1.

35. It is unreasonable and discriminatory to force a new party to meet a March 29 signature deadline to select candidates for the offices not listed in SDCL 12-5-21 while permitting that same party to wait until July 11 to submit signatures for the eight offices listed in 12-5-21. No other state in the nation has created a similar scheme. *See* Docket 40 at ¶ 3 (Supplemental Affidavit of Richard Winger) ("A law that sets a different filing deadline to run for attorney general or lieutenant governor than governor is not rational. There is no other state with such a peculiar election law provision.")

36. As this court has already noted, "South Dakota has not given any reason for the disparate treatment" of candidates and "defendants have advanced no reason why primary elections are necessary for some candidates but not others." Docket 43 at 15-16.

7

37. The discriminatory effect of defendants' policies is evident from a July 13, 2016 letter from Kea L. Warne, Deputy Secretary of State, to Lori Stacy. Warne acknowledged that "[w]e received the convention nomination certification from the Constitution Party," but that "US Senate nominee Kurt Evans and State House, District 23 nominee Wayne Schmidt are not eligible to be placed on the general election ballot. Pursuant to SDCL 12-5-21, US Senate and state legislator are not included in the list of offices that can be nominated at state party conventions." Docket 47-5 at 1. Similar letters were sent to Kurt Evans and Wayne Schmidt. Docket 47-5 at 2-3. Thus, had Mr. Evans and Mr. Schmidt sought offices listed in SDCL 12-5-21, they would have qualified for the ballot; they were discriminated against based solely on the offices they were seeking.

38. Defendants have yet to produce any evidence (even an affidavit from one of the defendants) indicating that prior Administrations interpreted SDCL 12-5-21 the way these defendants are interpreting it.

39. Defendants' interpretation of SDCL 12-5-21 is inconsistent with information on Secretary Krebs' public website. Nothing on that website notifies the public, for instance, that there are two methods by which a new party may place candidates on the ballot, nor does the website refer to the July 11 deadline for candidates seeking an office listed in SDCL 12-5-21.

40. In its opinion denying Plaintiffs' Motion for Reconsideration, the Court noted that "plaintiffs' amended complaint does not challenge the constitutionality of SDCL 12-6-1, 12-6-4, or 12-5-21." Docket 73 at 6. Plaintiffs now challenge the constitutionality of those statutes. It is clear that defendants are interpreting and applying those statutes in a manner that invidiously discriminates against the plaintiff political parties and their candidates. The precise interplay of these statutes will need to be determined by plaintiffs during discovery, but it is clear that defendants are employing them to deny access to the ballot to certain candidates of the plaintiff parties.

41. Plaintiffs are suffering irreparable harm as a result of the violations complained of herein, and that harm will continue unless and until this court orders a halt to defendants' actions.

## Claim One

42. South Dakota's deadline set forth in SDCL § 12-5-1 for new political parties to submit signed petitions seeking to participate in South Dakota elections violates rights guaranteed to the Plaintiffs by the First and Fourteenth Amendments to the United States Constitution, as enforced by 42 U.S.C. § 1983.

## Claim Two

43. SDCL 12-5-1, 12-6-1, 12-6-4, and 12-5-21, either individually or in combination, is/are being interpreted and enforced by defendants in a manner that results in invidious discrimination against candidates seeking an office not listed in SDCL 12-5-21.  This results in denying to certain candidates and to the supporters of those candidates, including plaintiffs herein, rights guaranteed by the First and Fourteenth Amendments to the United States Constitution, as enforced by 42 U.S.C. § 1983.

## Relief

WHEREFORE, Plaintiffs respectfully pray that this Court:

(1)  Accept jurisdiction over this case;

(2) Enter a declaratory judgment that South Dakota's deadlines set forth in SDCL 12-5-1 for new political parties to submit signed petitions seeking to organize and participate in South Dakota elections violate rights guaranteed to the Plaintiffs by the First and Fourteenth Amendments to the United States Constitution, as enforced by 42 U.S.C. § 1983;

(3)  Enjoin defendants from enforcing the deadline set forth in SDCL 12-5-1 for new political parties to submit signed petitions seeking to organize and participate in elections;

(4)  Enter a declaratory judgment that SDCL 12-5-1, 12-6-1, 12-6-4, and 12-5-21, to the extent they prohibit plaintiffs from nominating all of their candidates by convention in a manner allowed certain candidates by SDCL 12-5-21, violate rights guaranteed to plaintiffs by the First and Fourteenth Amendments to the United States Constitution, as enforced by 42 U.S.C. § 1983;

(5)  Enjoin defendants from enforcing SDCL 12-5-1, 12-6-1, 12-6-4, and 12-5-21 to the extent that they prohibit Plaintiffs from nominating all of their candidates by convention in a manner allowed certain candidates by SDCL 12-5-21.

(6)  Order defendants, until such time as the South Dakota Legislature enacts a constitutionally adequate law, to provide that a new or newly-qualifying political party can nominate all its candidates by convention;

(7) Award the Plaintiffs the costs of this action together with their reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and 52 U.S.C. § 10310*l*(e); and

(8) Retain jurisdiction of this action and grant the Plaintiffs any further relief which may in the discretion of this Court be necessary and proper.

Respectfully submitted this 13th day of December, 2016.

/s/ M. Laughlin McDonald
M. Laughlin McDonald
American Civil Liberties Union Foundation
2700 International Tower
229 Peachtree Street, NE
Atlanta, GA 30303
T/404-500-1235
F/404-565-2886
Lmcdonald@aclu.org

/s/ Stephen L. Pevar
Stephen L. Pevar
American Civil Liberties Union Foundation
765 Asylum Avenue
Hartford, CT 06105
T/860-570-9830
F/860-570-9840
spevar@aclu.org


/s/ Brendan V. Johnson
Brendan V. Johnson
Robins Kaplan, LLP
101 S. Main Street, Suite 100
Sioux Falls, South Dakota 57104
T/605-335-1300
F/612/339-4181
Bjohnson@robinskaplan.com

*Attorneys for Plaintiffs*