UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| LIBERTARIAN PARTY OF SOUTH DAKOTA; KEN SANTEMA, STATE CHAIR OF THE LIBERTARIAN PARTY OF SOUTH DAKOTA; BOB NEWLAND; CONSTITUTION PARTY OF SOUTH DAKOTA; LORI STACEY, STATE CHAIR OF THE CONSTITUTION PARTY OF SOUTH DAKOTA; AND JOY HOWE, SECRETARY OF THE CONSTITUTION PARTY OF SOUTH DAKOTA; | 4:15-CV-04111-KES |
| Plaintiffs, | |
| vs. | ORDER DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT |
| SHANTEL KREBS, IN HER OFFICIAL CAPACITY AS SECRETARY OF STATE OF THE STATE OF SOUTH DAKOTA; AND MARTY J. JACKLEY, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF SOUTH DAKOTA; | |
| Defendants. | |

Plaintiffs brought this action naming Shantel Krebs in her official capacity as Secretary of State of South Dakota and Marty Jackley in his official capacity as Attorney General of South Dakota as defendants. Plaintiffs allege two constitutional challenges to South Dakota's ballot access laws. Docket 85. Pending before the court are the parties' cross motions for summary judgment on both constitutional claims. Docket 97; Docket 102. Because there are

1

material facts in dispute, this court denies both motions for summary judgment.

## PROCEDURAL BACKGROUND

Plaintiffs initially brought this suit on June 15, 2015, seeking a declaratory judgment that the deadlines established in SDCL § 12-5-1 impose unreasonable restrictions on new political parties seeking to participate in South Dakota elections and thus violate their First and Fourteenth Amendment rights. Docket 1; Docket 19. Defendants first moved for summary judgment on March 3, 2016, arguing that South Dakota's ballot access laws place reasonable and nondiscriminatory restrictions on political parties. Docket 25. In denying defendants' motion, this court reasoned that South Dakota's ballot access laws impose a severe burden on third parties and their candidates and found that defendants had not identified a compelling reason for the disparate treatment of candidates running for political office in South Dakota. Docket 43.

On July 15, 2016, defendants moved for summary judgment a second time, arguing that additional grounds uncovered in discovery supported their motion. Docket 44. Plaintiffs moved for summary judgment on July 23, 2016 (Docket 54), and moved for a permanent injunction on July 25, 2016. Docket 60. This court denied plaintiffs' motion for a permanent injunction (Docket 68) and subsequently denied plaintiffs' motion to reconsider that order. Docket 73.

Then on September 12, 2016, plaintiffs moved to file a second amended complaint, arguing that defendants' answer to plaintiffs' first amended complaint raised a new interpretation of SDCL § 12-5-21. Docket 78. Plaintiffs

argued that defendants' new and unexpected interpretation—namely, that the eight offices listed in SDCL § 12-5-21 had later deadlines to access the South Dakota ballot than all other candidates—and subsequent enforcement of that interpretation changed the nature of the lawsuit. Docket 77. Noting this court's order denying plaintiffs' motion for a permanent injunction, plaintiffs argued that they did not initially challenge the constitutionality of SDCL § 12-5-21 because they were unaware SDCL § 12-5-21 had any connection to their constitutional challenge of SDCL § 12-5-1. *Id.* This court granted plaintiffs' motion to amend their complaint (Docket 84), and plaintiffs filed their second amended complaint on December 13, 2016. Docket 85.

In addition to the constitutional challenge to SDCL § 12-5-1, plaintiffs' second amended complaint raises a constitutional challenge to SDCL § 12-5-21 as a violation of the equal protection clause. *Id.* The parties subsequently sought to conduct additional discovery and to submit additional briefing. Docket 86. Thus, this court denied without prejudice the pending cross motions for summary judgment on December 20, 2016. Docket 87. Plaintiffs now move for summary judgment on both claims raised in the second amended complaint (Docket 97), and defendants move for summary judgment on both claims. Docket 102.

## FACTUAL BACKGROUND

In order to participate in South Dakota's primary election, a new political party must file a written declaration validly signed by at least 2.5% of South Dakota voters "as shown by the total vote cast for Governor at the last

3

preceding gubernatorial election" with the Secretary of State's office by the last Tuesday of March preceding the primary election. SDCL § 12-5-1. Any signatures from more than one year prior to the declaration's filing date are invalid. *Id.* South Dakota primary elections are held "on the first Tuesday after the first Monday in June of every even-numbered year." SDCL § 12-2-1. SDCL § 12-5-1 further provides that a political party loses the right to participate in the primary election if it fails to meet the definition of political party, which is defined in SDCL § 12-1-3(10) as "a party whose candidate for any statewide office at the last preceding general election received at least two and one-half percent of the total votes cast for that statewide office."[1] This means that a political party previously recognized under the petition process that then fails to receive 2.5% of the vote for any statewide office in a general election will have to regain new political party status through the petition process outlined in SDCL § 12-5-1 in the next election year.

To appear on the general election ballot, South Dakota law requires candidates for the United States Senate, United States House of Representatives, Governor, and all state legislative seats to participate in the primary election. *See* Docket 103 at 5 (citing to SDCL § 12-6-1). Defendants have interpreted SDCL § 12-5-21 to allow certain other candidates to be nominated by a political party's state convention instead of through a primary election. SDCL § 12-5-21 provides:

---

[1] When this lawsuit was originally filed, SDCL § 12-1-3(10) defined political party as "a party whose candidate for Governor at the last preceding general election at which a Governor was elected received at least two and one-half percent of the total votes cast for Governor."

4

> [t]he state convention shall nominate candidates for lieutenant governor, attorney general, secretary of state, state auditor, state treasurer, commissioner of school and public lands, and public utilities commissioner and in the years when a President of the United States is to be elected, presidential electors and national committeeman and national committeewoman of the party.

SDCL § 12-5-21.

Nominations at a party's state convention must be certified and received in the Secretary of State's office by the second Tuesday in August. SDCL § 12-5-22. A party must also give the Secretary of State 30 days' notice of the time and place of its party convention. SDCL § 12-5-17. Both parties agree that for the 2016 election, the last day new political parties could file their signatures to access the general election ballot for the SDCL § 12-5-21 offices was July 11, 2016. Docket 109 at 3.[2]

Plaintiffs include two political parties, the Libertarian Party and the Constitution Party, and four of their current or former members. Ken Santema is a South Dakota resident, registered voter, and was the Chair of the Libertarian Party of South Dakota when this suit was filed. Docket 36; Docket 85 at 2. Bob Newland is a South Dakota resident, registered voter, and a member of the Libertarian Party of South Dakota. Docket 35; Docket 85 at 2.

---

[2] In 2017, the South Dakota Legislature also passed SDCL § 12-5-1.5, which has been in effect since July 1, 2017. Under this statute, a new political party that does not have a candidate running for the United States Senate, United States House of Representatives, Governor, or state Legislature can organize by filing a declaration with at least 6,936 signatures (2.5% of the total vote for the last gubernatorial election) by July 1 of the election year. So any new political parties that do not have a primary candidate will have until July 1 to be recognized and can then nominate their general election candidates for the offices listed in SDCL § 12-5-21 during their party convention. Plaintiffs have not challenged this statute.

5

Lori Stacey is a South Dakota resident, registered voter, and the Chair of the Constitution Party of South Dakota. Docket 37; Docket 85 at 3. Joy Howe is a South Dakota resident, registered voter, and a member of the Constitution Party of South Dakota. Docket 38; Docket 85 at 3.

Plaintiffs state that the March deadline forces new political parties to gather their signatures during the cold winter months, which has slowed down their efforts, and that third parties often gain more supporters and raise more money closer to the general election. Docket 36; Docket 37. But to regain political party status for the 2016 election, both the Libertarian Party and the Constitution Party filed their written declarations and accompanying signatures with the Secretary of State. Docket 42 at 1-2.

Upon reviewing the signatures received on March 23, 2016, the Secretary of State's office determined that the Constitution Party submitted 7,655 valid signatures, which allowed it to regain political party status for the 2016 election. *Id.* at 3-4. The Libertarian Party, however, submitted its signatures on a rolling basis in several batches. *Id.* at 2. As of March 29, 2016, the last Tuesday of March and thus the filing deadline under SDCL § 12-5-1, the Libertarian Party had submitted only 4,399 valid signatures. *Id.* at 3. In his Affidavit submitted in support of Defendants' Motion for Summary Judgment, Kea Warne, the Deputy Secretary of State for the Election Services Division of the South Dakota Secretary of State's Office, stated that "[a] potential new political party that failed to submit a sufficient amount of valid signatures prior to the March 29, 2016, deadline would be precluded from participating in the

6

2016 primary election." Docket 104 at 4. Defendants state that this deadline "is necessary given the other laws and deadlines by which the South Dakota Secretary of State's Office and the sixty-six (66) county auditors must abide." *Id.* at 5-6.

The Secretary of State's office, however, accepted the Libertarian Party's late signature submissions, which it received on April 4, 2016 and May 2, 2016. *Id.* at 10. Mr. Warne further stated that after reviewing these additional petitions, "the Secretary of State's Office determined that the Libertarian Party of South Dakota submitted a sufficient amount of signatures to regain political party status pursuant to SDCL 12-5-1." *Id.* The Libertarian Party was then notified that it had regained new political party status on Friday, June 17, 2016. *Id.* South Dakota's 2016 primary election was held on June 7, 2016. Docket 105 at 6.

Plaintiffs stated in their Answers to Defendants' Discovery Requests that "[t]he Libertarian Party of South Dakota does not desire to participate in the primary election process and has never tried to gain primary ballot access for its candidates." Docket 48-1 at 7-8. Plaintiffs further stated that "[t]he Constitution Party never had any intention of having a primary election." *Id.* at 8. Finally, plaintiffs acknowledged that "[n]o candidate from either the Libertarian Party or Constitution Party tried to access the ballot for the 2016 primary election by collecting signatures or submitting a nominating petition to the Secretary of State's Office." *Id.* at 11-12. But plaintiffs have attempted to comply with the SDCL § 12-5-1 March deadline several times in order to access

the South Dakota ballot. *See* Docket 111 (noting that the Constitution Party met the March deadline in 2008, 2012, and 2016—the only third political party to meet the deadline more than once—and the Libertarian Party met the deadline in 2012); Docket 85 (explaining that plaintiffs submitted their signatures because they "wanted to be on the ballot for the 2016 general election in South Dakota" but some were approved after the March 29 deadline); Docket 36 (Ken Santema stated in his affidavit that he began efforts to collect signatures "to comply with this [March 29] deadline for the 2016 election . . . .").

The South Dakota Constitution Party nominated Kurt Evans for the United States Senate and Wayne Schmidt for the State House District 23 at its party convention in the summer of 2016, but it received a letter from Mr. Warne on July 13, 2016, advising that Mr. Evans and Mr. Schmidt could not be placed on the 2016 general election ballot. Docket 47-5. Mr. Warne stated in his letter that United States Senate and state legislative candidates are not included in the list of offices that can be nominated at a state party convention. *Id.* Because these candidates did not participate in the 2016 primary election, they were ineligible to be placed on the general election ballot. *Id.*

For the 2018 election, the filing deadline under SDCL § 12-5-1 will be March 27, 2018, and a new political party attempting to comply with the requirements in SDCL § 12-5-1 will need 6,936 valid signatures. Docket 109.

**LEGAL STANDARD**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of . . . demonstrat[ing] the absence of a genuine issue of material fact." (internal quotations omitted)). The moving party must inform the court of the basis for its motion and also identify the portion of the record that shows there is no genuine issue in dispute. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted).

Once the moving party meets its initial burden, the nonmoving party must establish "that a fact . . . is genuinely disputed" either by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c). "The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). "Further, 'the mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment. . . . Instead, the dispute must be outcome determinative under prevailing law.' " *Id.* (quoting *Get Away Club, Inc. v. Coleman*, 969 F.2d 664, 666 (8th Cir. 1992)). For purposes of summary judgment, the facts and inferences drawn from those facts are

9

"viewed in the light most favorable to the party opposing the motion."

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)

(quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## DISCUSSION

At the heart of the two constitutional challenges raised in plaintiffs'
Second Amended Complaint is the contention that South Dakota law restricts
third parties' access to the ballot. First, plaintiffs argue that the March
deadline set forth in SDCL § 12-5-1 for new political parties to submit their
petitions and accompanying signatures in order to participate in South Dakota
elections violates the First and Fourteenth Amendments. Docket 85 at 9.
Second, plaintiffs contend that defendants are interpreting and enforcing SDCL
§§ 12-5-1, 12-6-1, 12-6-4, and 12-5-21, individually or in combination, "in a
manner that results in invidious discrimination against candidates seeking an
office not listed in SDCL 12-5-21" as a violation of equal protection rights
guaranteed by the First and Fourteenth Amendments. *Id.*

## I.  Standing

Defendants argue that plaintiffs lack standing to bring their claims.
Docket 103 at 9. Plaintiffs disagree because (1) the law of the case doctrine
bars defendants' standing argument, and (2) standing is determined at the time
a lawsuit is filed. Docket 110 at 3.

Article III standing requires a plaintiff to demonstrate an injury in fact
that is fairly traceable to the defendant's challenged conduct and likely to be
redressed by a favorable judicial decision. *See Lujan v. Defenders of Wildlife*,

504 U.S. 555, 560-61 (1992). "The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed." *Id.* at 569 n.4 (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989)); *see also Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732 (2008) (framing the requirement of standing as the "personal interest that must exist at the commencement of the litigation" (quoting *Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000))).

Focusing on the injuries to the plaintiffs as voters rather than the plaintiffs as candidates in light of Eighth Circuit precedent, this court previously concluded that plaintiffs had standing to bring their constitutional challenge to SDCL § 12-5-1. Docket 18 at 4. Specifically, this court found that the "restrictive nature of SDCL 12-5-1 impacts plaintiffs' candidates, whom plaintiffs support. Because SDCL 12-5-1 may unconstitutionally exclude plaintiffs' candidate-of-choice from the primary election, plaintiffs have standing to challenge the law." *Id.*; *see also McLain v. Meier*, 851 F.2d 1045, 1048 (8th Cir. 1988) (concluding that plaintiff had standing to challenge ballot access laws because he suffered an injury as a voter that was fairly traceable to North Dakota's ballot access laws and his injury would be redressed if those laws were declared unconstitutional).

While citing no authority in support, defendants maintain that "[t]he filing of an amended complaint presenting new claims requires the Court to 'revisit' the determination of standing." Docket 103 at 9 n.5. It is true that "an amended complaint supercedes [sic] an original complaint and renders the

original complaint without legal effect." *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000). So federal courts must resolve questions regarding subject matter jurisdiction by examining the amended complaint. *Id.* But because the first claim raised in plaintiffs' Second Amended Complaint—the constitutional challenge to SDCL § 12-5-1—is identical to plaintiffs' amended complaint and this court found sufficient facts in the amended complaint to establish standing, the court adheres to its previous analysis. *See* Docket 18. The court acknowledges, however, that its previous standing analysis took place before the 2016 election, so the case is at a different posture today. *See Davis*, 554 U.S. at 733 (recognizing that standing must exist at all stages of review).

The individuals named as plaintiffs have standing to challenge SDCL § 12-5-1 because the law affects their abilities as South Dakota voters to support the candidates they choose. The court disagrees with defendants' reliance on the fact that the individual plaintiffs' "preferred parties have attained official recognition and had full opportunity to present candidates" in the 2016 election. Docket 103 at 12. Part of the plaintiffs' claimed injury is that they could not vote for the candidate of their choosing in the 2016 election cycle. SDCL § 12-5-1 has a cascading effect on the entire election year and its process. So a voter's ability to vote for the candidate of his or her choice in the general election is restricted by any South Dakota law that prevents such candidates from accessing the general election ballot if it did not comply with certain primary election requirements or procedures. That is exactly what

12

plaintiffs claim happened in this case. A declaratory judgment that SDCL § 12-5-1's requirements are unconstitutional would have allowed plaintiffs to place their candidates on the November 2016 general election ballot and vote for the candidates of their choice without having to overcome the burdens imposed by SDCL § 12-5-1's requirements.

As for the parties named as plaintiffs, defendants focus on the fact that the Constitution Party and the Libertarian Party regained political party status by the March 2016 deadline, but neither party submitted a nominating petition to place one of their candidates on the June 2016 primary so they have not established how their "efforts to place a candidate on the ballot were hindered." Docket 103 at 11-12. But again, as this court previously found, plaintiffs do not need to attempt full compliance with a state's ballot access scheme in order to challenge the constitutionality of the law. *See* Docket 18 at 5; *Williams v. Rhodes*, 393 U.S. 23, 45-46 (1968).

And while defendants urge the court to note that "South Dakota's statutory scheme regarding the recognition of new parties has changed during the course of this litigation" (Docket 103 at 10), the court agrees with plaintiffs that this appears to be more of a mootness argument raised by defendants rather than one of standing. *See* Docket 110 at 4.

Defendants also argue plaintiffs lack standing to challenge SDCL §§ 12-5-21, 12-6-1, and 12-6-4 as an equal protection violation and state that the individually named plaintiffs have not "presented or alleged sufficient facts to demonstrate that they have standing to contest the classification of

13

candidates." Docket 103 at 11-12. The court disagrees and finds the plaintiffs do have standing to bring their equal protection claim because both parties were restricted by South Dakota's statutory scheme in the 2016 election. If South Dakota allowed new political parties such as the Libertarian Party and the Constitution Party to nominate their "primary" candidates at their party convention in order to be placed on the general election ballot, both parties could have had more candidates on the 2016 general election ballot. For example, the Constitution Party nominated a candidate for both the State House and the United States Senate at its party convention in 2016, but the Secretary of State's office denied these two candidates access to the general election ballot because they were not chosen by a primary. Docket 47-5. And plaintiffs will not be able to select their primary candidates at their party convention in 2018, so defendants' reliance on the Constitution Party and the Libertarian Party already having political party status for 2018 is misplaced.

## II.   Mootness

The South Dakota Legislature amended SDCL § 12-1-3(10) during the 2017 legislative session to change the definition of "political party." Defendants rely on a statement by plaintiffs' expert that the new definition will make it easier for third political parties to retain political party recognition in South Dakota to support their argument that plaintiffs have not been injured. Docket 103 at 10-11; Docket 105 at 16-17. But plaintiffs are challenging SDCL § 12-5-1 and its requirements in order to *gain* political party status in the first place. They are not challenging SDCL § 12-1-3(10)'s definition and how it affects a

political party's ability to *retain* political party status. Thus, the changes to SDCL § 12-1-3(10) have not stripped plaintiffs of federal jurisdiction for mootness. *See Rosenstiel v. Rodriguez*, 101 F.3d 1544, 1548 (8th Cir. 1996) (concluding that plaintiffs' claim was not mooted by a change to the challenged statute when the amendment only related to one subdivision of a larger statutory scheme challenged by the plaintiffs).

Additionally, the fact that the Constitution Party and the Libertarian Party received recognition as political parties in South Dakota in 2016 does not render their claims moot. Mootness prevents a federal court from adjudicating a lawsuit when "there is no reasonable expectation that the wrong will be repeated." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 66 (1987) (quotation omitted). A defendant's "heavy" burden in seeking to have a case dismissed for mootness requires the defendant to show that "it is *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (emphasis in original) (quoting *United States v. Concentrated Phosphate Export Ass'n, Inc.*, 393 U.S. 199, 203 (1968)). Ballot access cases often survive mootness challenges because they are capable of repetition, yet evading review. *See Norman v. Reed*, 502 U.S. 279, 288 (1992); *Nat'l Right to Life Political Action Comm. v. Connor*, 323 F.3d 684, 691 (8th Cir. 2003) ("Election issues are 'among those most frequently saved from mootness by [the capable of repetition, yet evading review] exception.'") (quoting *Van Bergen v. Minnesota*, 59 F.3d 1541, 1546 (8th Cir. 1995))).

15

Defendants contend that the Constitution Party and the Libertarian Party may retain their political party status "indefinitely" due to the change to SDCL § 12-1-3(10) (Docket 108 at 5), but the court is not persuaded by this statement unsupported by evidence in the record. SDCL § 12-1-3(10) now defines "political party" as a party whose candidate for any statewide office—as opposed to a party whose candidate for governor—received 2.5% of the total vote at the last general election. But defendants have not provided evidence to establish it is "absolutely clear" the Constitution Party or the Libertarian Party will always maintain political party status in South Dakota based on this change. As explained by plaintiff's expert, Richard Winger, when both the Libertarian Party and the Constitution Party placed a candidate for PUC on the general ballot in 2004, neither party received 2.5% of the total vote. Docket 111 at 2. Further, neither party has ever received 2.5% of the total South Dakota vote for the United States Senate or United States House of Representatives, and the only time either party's presidential candidate received at least 2.5% of the vote was the Libertarian Party in 2016. *Id.* Thus, it is very possible that either or both political parties will lose their political party status and will then have to utilize the SDCL § 12-5-1 petition and signature process again. Because defendants have not met their heavy burden, plaintiffs' claims are not moot.

## III.  Ripeness

Defendants also contend that plaintiffs' claim is not yet ripe to the extent plaintiffs are challenging the current mechanism to obtain new party status.

Docket 103 at 12 n.6, Docket 108 at 6. The ripeness doctrine prevents courts from adjudicating alleged injuries that rest on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *281 Care Comm. v. Arneson*, 638 F.3d 621, 631 (8th Cir. 2011) (quotation omitted). To determine if a claim is ripe, the court looks at the " 'fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.' " *Parrish v. Dayton*, 761 F.3d 873, 875 (8th Cir. 2014) (quoting *Neb. Pub. Power Dist. V. MidAm. Energy Co.*, 234 F.3d 1032, 1038 (8th Cir. 2000)). "The fitness prong 'safeguards against judicial review of hypothetical or speculative disagreements.' " *Id.* (quoting *Neb. Pub. Power Dist.*, 234 F.3d at 1038). "The hardship prong asks whether delayed review 'inflicts significant practical harm' on the plaintiffs." *Id.* (quoting *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998)).

Here, defendants' ripeness challenge fails because plaintiffs' alleged injuries do not rest on contingent future events. Rather, plaintiffs have alleged an injury that has already occurred and can occur again due to the requirements of SDCL § 12-5-1. *See 281 Care Committee*, 638 F.3d at 631. Even though they obtained new political party status in 2016, plaintiffs are challenging the burdens imposed by the requirements to do so.

## IV.   Claim One: the Right to Associate and the Right to Vote

Plaintiffs' first claim, a facial challenge to the constitutionality of SDCL § 12-5-1 triggers two overlapping rights: the right to vote and the right to associate, as this court has previously analyzed. Docket 43 at 7. Although the

right to vote and the right to associate are fundamental rights protected by the First Amendment, the Constitution allows states to restrict ballot access in order to maintain fair, honest, and orderly elections. *Anderson v. Celebrezze*, 460 U.S. 780, 787-88 (1983). But the United States Supreme Court has long recognized the need to balance the interests of states in regulating elections with the fundamental rights of citizens and the dissemination of political ideas that third parties bring to elections. *See Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 185-86 (1979). In applying this balancing test, a court must determine if a specific provision of a state's election laws imposes a severe burden on the constitutional rights of the plaintiff. *See Anderson*, 460 U.S. at 788; *Green Party of Ark. v. Martin*, 649 F.3d 675, 680 (8th Cir. 2011). If the burden is severe, the state's regulation must be narrowly tailored and advance a compelling state interest. *Martin*, 649 F.3d at 680 (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 357 (1997)).

This court thoroughly analyzed the burdens imposed by SDCL § 12-5-1 on plaintiffs' constitutional rights in a previous opinion and concluded the burdens are severe. *See* Docket 43 at 7-12. Specifically, the court found the 6,936 signature requirement coupled with the late March deadline was "particularly troublesome" for third parties because it is expensive, difficult to gather the signatures during the winter months in a sparsely populated state, and people often support third party candidates after the two major political parties have chosen their candidates during the June primary election. *Id.* at 11. Defendants asserted that the March deadline imposed by SDCL § 12-5-1 is

18

necessary to ensure primary ballots are ready by the June primary date. *Id.* at 12; Docket 26 at 13-15.

In the opinion dated June 9, 2016, this court noted that defendants "would have shown a compelling state interest" if the only question before the court was whether the March deadline gave the Secretary of State's office sufficient time to distribute the primary ballots to all the counties. Docket 43 at 13. But defendants did not explain the state's interest in requiring new political parties to hold a primary election selection of its gubernatorial candidates but not for president, state attorney general, and other state-wide elected officials. *Id.* Thus, the court could not determine as a matter of law whether the severe burden imposed on plaintiffs' constitutional rights was greater than the state's interest in enforcing SDCL § 12-5-1 and denied defendants' motion for summary judgment. *Id.* at 13.

In its current motion for summary judgment, defendants urge the court to reconsider its conclusion that South Dakota's ballot access laws impose a severe burden on plaintiffs' rights. Docket 103 at 14. Defendants' argument for reconsideration appears to rely on the fact that plaintiffs previously qualified as a political party prior to the primary election deadline in several election years, so the burden cannot be severe. *Id.* at 15. It is true that the Libertarian Party and Constitution Party have qualified as new political parties by the March deadline in previous election years. On this point, plaintiffs have provided evidence that meeting such requirements is expensive and very difficult. *See* Docket 36 at 2-3 (Ken Santema described how he personally drove around the

state at his own expense to aid the petition circulation and how the Libertarian Party hired a paid circulator to help). Additionally, "the fact that an election procedure can be met does not mean the burden imposed is not severe." *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 592 (6th Cir. 2006).

Furthermore, defendants' argument for reconsideration misses a major argument made by the plaintiffs—namely, new political parties should not be subject to the requirements of SDCL § 12-5-1 at all. As plaintiffs and case law point out, new political parties often gather their support after the two major political parties put forth their candidates and voters realize they may not agree with either candidate's views. Docket 98 at 12; Docket 36 at 4; *see also McLain v. Meier*, 637 F.2d 1159, 1164 (8th Cir. 1980). Thus, voters often turn to third political parties later in the election cycle, after the primary election. But under SDCL § 12-5-1, no third party candidate running for an office not listed in SDCL § 12-5-21 will be found on the November general election ballot unless that candidate submits its 6,936 signatures by the last Tuesday in March and then participates in the South Dakota primary election in June. Thus, the court is not persuaded by defendants' attempt to reconsider the severity of the law's burdens.

Because SDCL § 12-5-1 imposes severe burdens on plaintiffs' constitutional rights, it is subject to strict scrutiny. In other words, the defendants have the burden to demonstrate that the ballot access law is narrowly tailored to serve a compelling state interest. *Moore v. Martin*, 854 F.3d 1021, 1026 (8th Cir. 2017), *cert. denied*, 2017 WL 3324827 (Oct. 10, 2017).

20

In *Moore*, the Eighth Circuit Court of Appeals examined Arkansas election laws that set the filing deadline for potential independent candidates. *Moore*, 854 F.3d at 1023. Under Arkansas law, independent candidates were required to submit petitions and accompanying elector signatures in March, which was the same time political party candidate petitions were due, even though the independent candidates did not have to run in the June primary election like the political party candidates. *Id.* at 1023-24. The parties filed cross-motions for summary judgment, and the district court granted summary judgment in favor of Martin, the Arkansas Secretary of State. *Id.* at 1024. The district court concluded that even though the March deadline was a substantial burden on Moore's rights, Arkansas had a compelling state interest in administering the general election ballot and the March deadline was narrowly tailored to serve that interest. *Id.* at 1025.

The Eighth Circuit, however, reversed the district court in part, holding that the district court erred in granting summary judgment in favor of the Secretary of State. *Id.* at 1028. While noting the district court correctly found the March deadline to be a burden on the plaintiff's constitutional rights and Arkansas did have a compelling interest, the Eighth Circuit found a "genuine dispute of material fact [as to] whether the March 1 deadline [was] narrowly drawn to serve that compelling interest." *Id.* at 1026-27.

The questions here are whether South Dakota has a compelling state interest in having certain candidates participate in a primary election while others can be selected by convention, and whether South Dakota's ballot

21

access laws are narrowly tailored to further that state interest. Like *Moore*, the record here is unclear regarding material facts on this question. While defendants argue at length that the burdens imposed by SDCL § 12-5-1 are not severe, they hardly explain the specific regulatory interests the ballot access law furthers. *See* Docket 103 at 22-23. Defendants correctly note the important state interest in avoiding voter confusion, ballot overcrowding, and frivolous candidates on the ballot, in addition to effective administration of the South Dakota ballot. Docket 103 at 21-22; Docket 108 at 12-13. But other than these broad, generalized reasons, defendants have not explained why a 2.5% signature requirement by the last Tuesday in March is necessary for new political parties. And to the extent that defendants have produced evidence in support of South Dakota's compelling state interests or shown how the South Dakota ballot access laws are narrowly tailored to further those interests, plaintiffs have disputed that evidence. Thus, because there is a genuine issue of material fact regarding this issue, both the plaintiffs' and defendants' motions for summary judgment on plaintiffs' first claim are denied.

## V.    Claim Two: Equal Protection

Plaintiffs' second claim challenges defendants' interpretation of several South Dakota ballot access laws as a violation of the equal protection clause. Plaintiffs have alleged that SDCL § 12-5-1 as it interacts with SDCL § 12-5-21 causes candidates for South Dakota political offices to be treated differently. South Dakota law requires candidates for the United States Senate, United States House of Representatives, Governor, and all state legislative seats to

22

participate in the primary election in order to appear on the general election ballot and defendants have cited SDCL § 12-6-1 and § 12-6-4 in support of this. *See* Docket 103 at 23-24.[3] But candidates for lieutenant governor, attorney general, secretary of state, state auditor, state treasurer, commissioner of school and public lands, public utilities commissioner, and presidential electors and national committeeman and national committeewoman of the party during presidential election years can be nominated by party convention. *See* Docket 108 at 17 (citing SDCL § 12-5-21). This means that candidates for offices listed in SDCL § 12-5-21 (the convention candidates) can be placed on the ballot if the new political parties submit their signatures by July 1, 2018,[4] while all other candidates (the primary candidates) have to submit their signatures by the last Tuesday of March.

Defendants argue South Dakota's nomination process does not violate the Equal Protection Clause because it treats candidates of established political parties and candidates of new political parties the same. Docket 108 at 18. But "the United States Supreme Court has previously invalidated an election law scheme despite the scheme treating all parties equally because, in application, the equal treatment had a disparate impact." *Libertarian Party of N.D. v. Jaeger*, 659 F.3d 687, 702 (8th Cir. 2011) (citing *Williams*, 393 U.S. at 34); *see also*

---

[3] SDCL § 12-6-1 provides generally "[t]he provisions of this chapter shall apply to the election to party office and for the nominations of political and nonpolitical candidates for public offices except as may be otherwise provided."
[4] The deadline will be be July 1 under the plain language of newly-enacted SDCL § 12-5-1.5, but only if the new political party submits its signatures in support of convention candidates and does not also run a primary candidate.

23

*Jenness v. Fortson*, 403 U.S. 431, 442 (1971) ("Sometimes the grossest discrimination can lie in treating things that are different as though they were exactly alike . . . .").

The Supreme Court has applied the standards of the Equal Protection Clause to statutory provisions on elections for several decades, long ago stating:

> The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government. And the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise.

*Reynolds v. Sims*, 377 U.S. 533, 555 (1964); *see also Williams*, 393 U.S. at 34 (holding that the totality of Ohio's restrictive election laws burdened the right to vote and right to associate as an invidious discrimination in violation of the Equal Protection Clause).

To determine if a state law violates the Equal Protection Clause, courts must consider "the character of the classification in question[,] the individual interests affected by the classification[,] and the governmental interests asserted in support of the classification." *Dunn v. Blumstein*, 405 U.S. 330, 334 (1972). But courts must go one step further in the equal protection context, namely by determining "whether the law disadvantages one group over another so as to result in unequal treatment and whether this unequal treatment is justified by a compelling interest." *Libertarian Party of N.D.*, 659 F.3d at 702.

In *Illinois State Board of Elections*, the Supreme Court analyzed the effect of the Illinois election code's classification on new parties and independent candidates under the Equal Protection Clause. 440 U.S. at 183. In its equal protection analysis, the Court discussed how ballot access restrictions burden the right to associate and the right to vote so such restrictions must serve a compelling state interest. *Id.* at 184. In other words, the Supreme Court's analysis under the Equal Protection Clause was the same analysis this court utilized for plaintiffs' first claim in this case. The court finds that the two claims—a violation of plaintiffs' First and Fourteenth Rights and a violation of plaintiffs' equal protection rights—are scrutinized almost identically.

Because this equal protection claim inherently hinges on the outcome of plaintiffs' first claim challenging the constitutionality of SDCL § 12-5-1 and questions of fact remain on that claim, the court cannot conclude as a matter of law that South Dakota's disparate nominating process is a violation of plaintiffs' equal protection rights. Defendants also have not produced sufficient evidence to establish whether South Dakota's disparate nominating process is justified by a compelling state interest. Thus, plaintiffs' and defendants' motions for summary on plaintiffs' equal protection claim are denied.

## CONCLUSION

The court finds that there are genuine issues of material fact in dispute regarding both claims that preclude entry of summary judgment for either party. A trial court should act with caution in deciding whether to grant summary judgment and may deny summary judgment "in a case where there is

25

reason to believe that the better course would be to proceed to a full trial."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Thus,

IT IS ORDERED:

1.    Plaintiffs' motion for summary judgment (Docket 97) is denied.

2.    Defendants' motion for summary judgment (Docket 102) is denied.

DATED this 19th day of December, 2017.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE