IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA SOUTHERN DIVISION

LIBERTARIAN PARTY OF SOUTH)
DAKOTA, et al.,                        )
                                               )
    Plaintiffs,                     )
                                               )
    v.                                    )       4:15-CV-04111-KES
                                               )
SHANTEL KREBS, IN HER        )
OFFICIAL CAPACITY AS         )
SECRETARY OF STATE OF THE )
STATE OF SOUTH DAKOTA, et al.,)
                                               )
    Defendants.                   )
_____ )

<u>DECLARATION OF M. LAUGHLIN MCDONALD</u>

    1.  My name is M. Laughlin McDonald, one of the attorneys for the Plaintiffs.  I submit this declaration in support of Plaintiffs' motion for costs and attorney fees.

    2.  <u>Time and Labor Required</u>.  Attached hereto as Exhibit 1 is a statement of hours (447.1) and services which I rendered in this case in which all segments of time are identified as to the nature of the work performed.  I personally prepared Exhibit 1 based upon a review of my contemporaneous time records, the pleadings, correspondence, and the entire record, and believe it to be true and correct.  I further certify that the work performed was reasonably necessary to the preparation and presentation of the case.  However, some hours I did not include, *i.e.*, the time spent compiling my hours and preparing my fee declaration.

    3.  <u>The Novelty and Difficulty of the Questions</u>.  The legal and factual issues in this case were reasonably complex, including the remedy for a constitutional violation.



4. <u>The Skill Requisite to Perform the Legal Services</u>.  The preparation of this case required a high level of skill and expertise.

5. <u>The Preclusion of Other Employment by the Attorney Due to Acceptance of the Case</u>. Acceptance of this case was an important undertaking which preempted other business in my office.

6. <u>The Customary Fee for Similar Work</u>.  In 2005 I was awarded an hourly rate of $400 in *Moultrie v. Charleston County*, C.A. No. 2:01-00562-23 (D. S.C. August 8, 2005), a challenge to at-large elections in Charleston County, South Carolina.  A copy of the order of the district court is attached hereto as Exhibit 2. In 2006 I was awarded an hourly rate of $400 in *Bone Shirt v. Hazeltine*, 2006 WL 1788307 *10 (D. S.D., June 22, 2006), a challenge to legislative redistricting in South Dakota.  The court concluded that the lodestar "should be calculated using Atlanta rates rather than South Dakota rates." *Id.* at *8.  The court based its conclusion on several factors, including: "The limited number of local attorneys that would be willing to take a voting rights case of this magnitude supports an Atlanta rate."; McDonald "specialize[s] in voting rights cases;" and that this specialization "enabled this case to be effectively tried in a shorter amount of time." *Id.* at **9-10.  In 2008, in *Cottier v. City of Martin*, 2008 WL 2696917 (D. S.D., March 25, 2008), a challenge to the City of Martin's city council wards, the court, in a decision by Judge Piersol, awarded me an hourly rate of $400.  The court, citing the decision in *Bone Shirt*, concluded this rate was "appropriate even though it is more than our normal local rate." *Id.* at **13-14.  The hourly rates I sought and were awarded in the cases cited above were lower than the rate I presently seek and lower than the rate I am presently entitled to.  The hourly rate I am currently seeking in this case of $600 is consistent with rates awarded attorneys in comparable federal litigation.  In *W.A. Griffin, M.D. v. General Mills, Inc.*, 157 F.Supp.3d 1350,

1355-56 (N.D. Ga. 2016), for example, the court found that hourly rates in 2016 of $650 for a partner with 35 years experience and $455 for an associate were reasonable. The Fulton County, Georgia, *Daily Report* released a survey in 2013 of hourly rates charged by attorneys in the Atlanta area. *See Daily Report*, "Hourly rates in a time of moderation," March 25, 2013, a copy of which is attached as Exhibit 3. The survey showed that the average rate billed by partners was $484 an hour, while the highest partner billing rate was $925 an hour. *See Gaylor v. Greenbriar of Dahlonega Shopping Center, Inc.*, 2014 WL 2195719 *9 (N.D. Ga., May 27, 2014) (relying upon the 2013 rate survey). The rate I seek in this case is thus comparable to those of other lawyers in the Atlanta area and demonstrates that the rate is reasonable.

My hourly rate is also commensurate with the "Laffey Matrix," a tool approved in *Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354, 371 (D. D.C. 1983), which sets hourly rates for attorneys engaged in civil work in the Washington, D.C., metropolitan area based on years of experience. The matrix is publically available on the internet at <http:www.laffeymatrix.com>. According to this matrix, a reasonable hourly rate in Washington, D.C., for an attorney with my experience of 48 years would be approximately $864. Moreover, it is easy to adjust this rate for the Atlanta and South Dakota markets using locality pay tables from the federal government's Office of Personnel Management. *See* <https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/2018/general-schedule/>. The federal government estimates that the cost of living in Atlanta is 94.5% as high as the cost of living in Washington, and an adjusted Laffey Matrix in Atlanta for someone of my experience would be approximately $816. The federal government estimates that the cost of living in South Dakota is 90.0% as high as the cost of living in Washington, and an adjusted Laffey Matrix in South Dakota for someone of my experience would be approximately $778. *See also Gaylor v. Greenbriar of Dahlonega*

*Shopping Center, Inc.*, 2014 WL 2195719 *9 (N.D. Ga., May 27, 2014) (relying upon "a cost-of-living adjusted Laffey matrix").

    7.  Whether the Fee Is Fixed or Contingent.   The Voting Rights Project of the American Civil Liberties Union Foundation, Inc., of which I am the Director Emeritus, is a private charitable civil rights legal organization which accepts cases involving the constitutional and civil rights of minority and other persons on a non-fee generating basis.  As such, we have no fee arrangements with our clients.  However, the Voting Rights Project is dependent upon court awards of attorney's fees in appropriate cases for a percentage of its budget.  To the extent that we are dependent upon court awarded fees, this was a contingent fee case because the court award was contingent upon Plaintiffs being the prevailing parties.

    8.  Time Limitations Imposed by the Client or the Circumstances.  This has been a priority case and has preempted other work in my office.

    9.  The Amount Involved and the Results Obtained.  Plaintiffs are the prevailing parties in this case in that they secured a decision from this Court that ballot access laws challenged by Plaintiffs, *i.e.*, "SDCL §§ 12-5-1, 12-6-1, 12-6-4, and 12-5-21 violate the First and Fourteenth Amendment rights guaranteed by the United States Constitution as applied to Plaintiffs."  Doc. 130, p. 15.

    10.  The Experience, Reputation, and Ability of the Attorney.

        a.  Education.  I received a B.A. degree from Columbia University in 1960, and an LL.B. degree from the University of Virginia Law School in 1965.

        b.  Bar Membership.  I am admitted to the state bars of South Carolina and Georgia, and am admitted to practice in the Supreme Court of the United States and the Courts of Appeals for the Fourth, Fifth, Sixth, Seventh, Ninth, Tenth, Eleventh, and District of Columbia

Circuits.

    c. <u>Legal Practice and Experience</u>.  I have been engaged in the active practice of law for more than 48 years both in private practice and as an employee of the ACLU.  I have also been a member of the faculty of the University of North Carolina Law School at Chapel Hill.

    d. <u>Publications</u>.  I have written two book on voting rights, *American Indians and the Fight for Equal Voting Rights* (Oklahoma U. Press; Norman, 2010), and *A Voting Rights Odyssey; Black Enfranchisement in Georgia* (Cambridge U. Press; Cambridge, 2003).

I have written other books on the rights of racial minorities, all of which contain chapters on voting rights, <u>i.e.,</u> *Racial Equality* (National Textbook Co.; Skokie, Ill., 1977); *The Rights of Racial Minorities* (Avon Books; New York, 1980) (co-author); *The Rights of Racial Minorities* (Southern Illinois U. Press, 1993) (co-author) (second edition); *The Rights of Racial Minorities* (Puffin Books, 1997) (co-author) (edition for young adults).

I have written book chapters on voting rights, including:"The Bull Connor Is Dead Myth: Or Why We Need Strong, Effectively Enforced Voting Rights Laws," in *The Most Fundamental Right* ed. Daniel McCool (Bloomington; Ind. U. Press, 2012); "Beyond School Desegregation: The Impact of <u>Brown</u>," in *Remembering Brown at Fifty* eds. Orville V. Burton & David O'Brien (Urbana; U. Ill. Press, 2009); "Ballot Security," in *American Crisis, Southern Solutions* ed. Anthony Dunbar (Montgomery; NewSouth Books, 2008); "Expanding Coverage of Section 5 in Indian Country," in *The Future of the Voting Rights Act* eds. David Epstein, R. de la Graza, S. O'Halloran, & R. Pildes (New York; Russell Sage Foundation, 2006) 163; "Redistricting and Voting Rights Issues, 1992-2002: A Legal Analysis," in *Voting Rights and Minority Representation: Redistricting, 1992-2002* ed. David A. Bositis (Washington, D.C.; Joint Center for Political and Economic Studies, 2006); "Federal Oversight of Elections and Partisan

Realignment," in *The Voting Rights Act: Securing the Ballot* ed. Richard M. Valelly (Washington, D.C.; CQ Press, 2006) 161; "Democracy Cannot Be Exported If It Is Not Secure at Home," in *Where We Stand: Voices of Southern Dissent* ed. Anthony Dunbar (Montgomery; NewSouth Books, 2004); "Congressional Redistricting on the Basis of Race: Abrams v. Johnson," in *Commentaries on Law & Public Policy: 1997 Yearbook*, ed. Robert W. McGee (East Orange, N.J.; The Dumont Institute, 1998); "Georgia," in *Quiet Revolution in the South*, eds. Bernard Grofman & C. Davidson (Princeton; Princeton U. Press, 1994) (co-author); "The 1982 Amendments of Section 2 and Minority Representation," in *Controversies in Minority Voting: The Voting Rights Act in Perspective*, eds. Grofman & Davidson (The Brookings Institution; Washington, D.C., 1992).

I have written numerous articles or reviews on voting rights for scholarly journals and other publications, including: "Proposed Amendments to the Voting Rights Act of 1965," 1 *Transatlantica* (2015); "The Looming 2010 Census: A Proposed Judicially Manageable Standard and Other Reform Options for Partisan Gerrymandering," 46 *Harv. J. Leg.* 243 (2009); "A Challenge to the Constitutionality of Section 5 of the Voting Rights Act: *Northwest Austin Municipal Utility District Number One v. Mukasey*," 3 *Charleston L. Rev.* 231 (2009); "Crawford v. Marion County Board of Elections," *Minnesota Journal* (November 2008), 4; "Civil Rights In the Modern Era: Edgefield County, South Carolina, A Personal Reflection," 1 *Stan. J. of Civ. Rights & Civ. Lib.* 303 (2005); "The Voting Rights Act in Indian Country: South Dakota, A Case Study," 29 *Am. Ind. L. Rev.* 43 (2004-2005); "Rally 'Round the Flag Boys: Continued White Flight from the Democratic Party," 25 *Southern Changes* 8 (2003); "Whatever Happened to the Voting Rights Act?  Or, Restoring the White Privilege," 7 *J. South. Leg. Hist.* 207 (1999); "Can Minority Voting Rights Survive *Miller v. Johnson*?" 1 *Mich. J. R. & L.* 119

(1996); "The Counterrevolution in Minority Voting Rights," 65 *Miss. L. J. 271* (1995); "*Holder v. Hall*: Blinking at Minority Voting Rights," 3 *D.C. L. Rev.* 61 (1995); "This Way?  Voting Rights At A Crossroads," 1 *Civil Rights J.* 36 (1995); "Racial Fairness--Why Shouldn't It Apply to Section 5 of the Voting Rights Act?" 21 *Stetson L.Rev.* 847 (1992); "The Quiet Revolution in Minority Voting Rights," 42 *Vand.L.Rev.* 1249 (1989); "Votes of Confidence," *Foundation News*, Sept./Oct. 1988; "An Aristocracy of Voters: The Disfranchisement of Blacks in South Carolina," 37 *S.C.L.Rev.* 557 (1986); "Uneasy Victories in the Supreme Court," 8 *Southern Changes* 15 (1986); "The Majority Vote Requirement: Its Use and Abuse in the South," 17 *Urban Lawyer* 429 (1985); "The Voting Rights Act and Vote Dilution," 19 *Ga.Law.Rev.* 459 (1985); "The 1982 Extension of Section 5 of the Voting Rights Act of 1965: The Continued Need for Preclearance," 51 *Tenn.L.Rev.* 1 (1983); "Voting Rights on the Chopping Block," 9 *Southern Exposure* 89 (1981).

I have written a manual on voting rights litigation, *Litigation Under the Voting Rights Act* (Center for Constitutional Rights, New York, 1986) (co-author), and a special report on voting rights in the South, *Voting Rights in the South: Ten Years of Litigation Challenging Continuing Discrimination against Minorities* (ACLU; New York, 1982).

e. Litigation.  I have specialized in the area of voting rights and have been counsel in more than 150 such cases, including: *Shelby County, Alabama v. Holder*, 133 S.Ct. 2612 (2013) (challenge to the constitutionality of Section 5 of the Voting Rights Act); *Montes v. City of Yakima*, 40 F.Supp.3 1377 (E.D. Wash. 2014) (challenge to at-large elections under Section 2 of the Voting Rights Act); *Wright v. Sumter County Board of Elections and Registration*, 2015 WL 4255685 (M.D. Ga. 2015) (challenge to districting plan for board of education under Section 2 of the Voting Rights Act); *LaRoque v. Holder*, 679 F.3d 905 (D.C.

Cir. 2012) (challenge to the constitutionality of Section 5 of the Voting Rights Act); *Large v. Fremont County, Wyoming*, 670 F.3d 1133 (10th Cir. 2012) (challenge to at-large elections under Section 2 of the Voting Rights Act); *Gray v. South Carolina State Election Commission*, 2010 WL 753767 (D. S.C. 2010) (action to enforce Section 5 of the Voting Rights Act); *Levy v. Lexington County, S.C.*, 589 F.3d 708 (4th Cir. 2009) (Section 2 challenge to at-large elections); *Janis v. Nelson*, 2009 WL 521902 (D. S.D. 2009) (dismissing a challenge to the constitutionality of Section 5); *Northwest Austin Municipal Utility District Number One v. Mukasey*, 573 F.Supp.2d 221 (D. D.C. 2008) (dismissing a challenge to the constitutionality of Section 5), *vacated and remanded on other grounds*, 557 U.S. 193 (2009); *Cottier v. City of Martin*, 445 F.3d 1113 (8th Cir. 2006); *Stewart v. Blackwell*, 444 F.3d 843 (6th Cir. 2006); *Bone Shirt v. Hazeltine*, 336 F.Supp.2d 976 (D. S.D. 2004); *Moultrie v. Charleston County Council*, 316 F.Supp.2d 268 (D. S.C. 2003); *Wright v. City of Albany*, 306 F.Supp.2d 1228 (M.D. Ga. 2003); *Colleton County Council v. McConnell*, 201 F.Supp.2d 618 (D. S.C. 2002); *Emery v. Hunt*, 272 F.3d 1042 (8th Cir. 2001); *Old Person v. Cooney*, 230 F.3d 1113 (9th Cir. 2000); *RWTAAAC v. Sundquist*, 209 F.3d 835 (6th Cir. 2000); *Vander Linden v. Hodges*, 193 F.3d 268 (4th Cir. 1999); *Cuthair v. Montezuma-Cortez, Colorado School District*, 7 F. Supp.2d 1152 (D. Col. 1998); *Abrams v. Johnson*, 521 U.S. 74 (1997); *Miller v. Johnson*, 515 U.S. 900 (1995); *Cousin v. McWherter*, 904 F. Supp. 686 (E.D. Tenn. 1995), *rev'd and remanded*, 46 F.3d 568 (6th Cir. 1995); *Chatman v. Spillers*, 44 F.3d 923 (11th Cir. 1995); *Holder v. Hall*, 512 U.S. 874 (1994); *SRAC v. Theodore*, 508 U.S. 968 (1993); *Brooks v. State Board of Elections*, 775 F. Supp. 1470, *aff'd*, 498 U.S. 916 (1990); *Gresham v. Harris*, 695 F. Supp. 1179 (N.D. Ga.), *aff'd*, 495 U.S. 954 (1990); *Brown v. Board of Commissioners of Chattanooga, Tenn.*, 722 F. Supp. 380 (E.D. Tenn. 1989); *Jackson v. Edgefield County, South Carolina School District*, 650 F. Supp. 1176 (D. S.C.

1986); *Windy Boy v. County of Big Horn*, 647 F. Supp. 1002 (D. Mont. 1986); *McCain v. Lybrand*, 465 U.S. 236 (1984); *County Council of Sumter County, South Carolina v. United States*, 596 F. Supp. 35 (D. D.C. 1984); *Busbee v. Smith*, 549 F. Supp. 494 (D. D.C. 1982), *aff'd*, 459 U.S. 1166 (1983); *Rogers v. Lodge*, 458 U.S. 613 (1982); *Sumter County School District v. Edge*, 541 F. Supp. 55 (M.D. Ga.), *aff'd*, 456 U.S. 1002 (1982); *Allen v. Ellisor*, 664 F.2d 391 (4th Cir.), *vacated and remanded*, 454 U.S. 807 (1981); *Canady v. Lumberton City Board of Education*, 454 U.S. 957 (1981); *Berry v. Doles*, 438 U.S. 190 (1978).

      f. <u>Supreme Court and Appellate Court Oral Arguments</u>. In addition to litigation in district courts, I have argued three cases before the Supreme Court of the United States and presented oral argument on appeal in the Fourth, Fifth, Sixth, Ninth, Tenth, and Eleventh Circuits.

      g. <u>Congressional Testimony</u>. I have testified before Congress on voting rights matters, including: the House of Representatives, Subcommittee on the Constitution, in 2008 on the denial and suppression of the American Indian vote (written statement); the House of Representatives, Committee on the Judiciary, in 2007 on federal oversight of the Voting Section of the Civil Rights Division of the Department of Justice; the United States Senate, Committee on the Judiciary, in 2006 on the extension of the Voting Rights Act; the House of Representatives, Committee on the Judiciary, in 2006 on extension of the Voting Rights Act; the United States Senate, Committee on Rules and Administration, in 1988 on the Universal Voter Registration Act; the House of Representatives, Subcommittee on Civil and Constitutional Rights, in 1985 in oversight hearings involving the Attorney General's proposed revisions of the Section 5 regulations; the United States Senate, Committee on the Judiciary, in 1982 on the extension of the Voting Rights Act; and, the House of Representatives, Committee on the

Judiciary, in 1981 on extension of the Voting Rights Act.

11.  <u>The Undesirability of the Case</u>.  It has been my experience that many members of the bar are reluctant to represent minorities or minority groups in civil rights cases because the possibility of recovering a fee is generally contingent and depends upon the plaintiffs being prevailing parties.  The litigation is also controversial, which makes it unattractive for some members of the bar.

12.  <u>The Nature and Length of the Professional Relationship with the Client</u>.  I have not received any fee from the Plaintiffs and have no professional fee relationship with them in any private or commercial matter.

13.  <u>Awards in Similar Cases</u>.  I believe the award requested in this case is consistent with awards made in similar voting rights cases.

14.  <u>Costs and Expenses</u>.  Attached hereto as Exhibit 4 is a statement of the costs and expenses ($4,196.01) I have incurred in representing the Plaintiffs.  I certify that the expenses were necessary to the preparation and presentation of the case.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on April 18, 2018, at Atlanta, Georgia.

M. LAUGHLIN MCDONALD
American Civil Liberties
Union Foundation, Inc.
2700 International Tower
229 Peachtree Street, NE
Atlanta, GA  30303
Tel: (404) 500-1235
Fax: (404) 565-2886
Lmcdonald@aclu.org