UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

**************************************************************************

|  |  |  |
|---|---|---|
| | * | |
| LIBERTARIAN PARTY OF SOUTH | * | CIV 15-4111 |
| DAKOTA, et al., | * | |
| | * | |
| Plaintiffs, | * | MEMORANDUM OPINION |
| | * | AND ORDER ON MOTION FOR |
| -vs- | * | ATTORNEY FEES AND EXPENSES |
| | * | |
| SHANTEL KREBS, et al., | * | |
| | * | |
| | * | |
| Defendants. | * | |
| | * | |

**************************************************************************

Upon prevailing in an action under 42 U.S.C. § 1983 to enforce rights guaranteed under the First and Fourteenth Amendments to the United States Constitution, Plaintiffs seek attorney fees and expenses. Defendants ask for a downward adjustment to the amount of fees requested by Plaintiffs. For the following reasons, the Plaintiffs' Motion is granted in part and denied in part.

## BACKGROUND

This case involved constitutional challenges to South Dakota's deadline requiring new or newly-qualifying political parties seeking to organize and participate in South Dakota elections to submit a written petition (containing a certain number of qualified signatures) to the Secretary of State in order to appear on the ballot. Plaintiffs argued that South Dakota's early deadlines requiring new or newly-qualifying political parties to organize and obtain signatures months before the major political parties selected their candidates and chose their platforms, and thus months before most voters were likely to be drawn to minor parties discriminated against those candidates and their supporters who wished to participate meaningfully in the electoral process. Plaintiffs sought declaratory and injunctive relief prohibiting the Defendants from enforcing the ballot-access deadlines.

Defendants chose to defend rather than amend the South Dakota statutes. The parties litigated the case for almost three years through two motions for summary judgment filed by Defendants, and a two-day court trial. The Court ruled that the substantially burdensome ballot access provisions were not narrowly tailored to serve a compelling state interest, and thus the statutes violated the First

Amendment right to vote and right to associate as applied to new political parties in South Dakota. *See Libertarian Party of South Dakota v. Krebs*, 290 F.Supp.3d 902 (D.S.D. 2018).

## DISCUSSION

Under the Voting Rights Act, 52 U.S.C. § 10310(e) (formerly 42 U.S.C § 1973l(e)), and the Civil Rights Attorney's Fees Award Act, 42 U.S.C. § 1988(b), a district court has discretion to award reasonable attorney's fees to a "prevailing party." The test for a prevailing party explained by the Supreme Court is that "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992); *see Texas State Teachers Ass'n v. Garland Indep. School Dist.*, 489 U.S. 782, 792–93 (1989) ("The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute."). Defendants do not dispute that Plaintiffs prevailed on their constitutional challenges to the statutes at issue in this case. The Court finds that Plaintiffs are prevailing parties and therefore qualify for an award of reasonable attorney's fees.

Plaintiffs retained two out-of-state lawyers, M. Laughlin McDonald from Atlanta, Georgia and Stephen L. Pevar from Hartford, Connecticut. Local counsel are Brendan Johnson and Tim Billion of Robins Kaplan LLP. The lodestar requested by Plaintiffs will be discussed in greater detail below, but it is summarized here:

| Counsel | Hours Billed | Rate | Fees Requested |
|---|---|---|---|
| Laughlin McDonald | 447.1 | $600 | $268,260.00 |
| Stephen Pevar | 931.3 | $500 | $465,650.00 |
| Brendan Johnson | 136.8 | $300 | $41,040.00 |
| Tim Billion | 71.3 | $250 | $17,825.00 |
| **Total** | | | **$792,775.00**[1] |

---

[1] This amount differs from the total of $796,435.00 requested by Plaintiffs because Plaintiffs included 11 hours that Brendan Johnson eliminated from his billable hours for time related to his travel to and from, and attendance at, the deposition of Shantel Krebs. *See* Doc. 148, Declaration of Brendan V. Johnson at ¶ 5. In addition, Plaintiffs miscalculated Laughlin McDonald's total. Multiplying his $600 rate by 447.1 hours equals $268,260.00, not $268,620.00.

2

In support of the requested fees, Plaintiffs submit declarations of their lawyers with detailed billing records attached. (Docs. 143, 146, 147 and 148.) Plaintiffs discuss the aggressive defense they faced from their opponents and how their success in this lawsuit not only changed the legal relationship between Plaintiffs and Defendants, but also "changed the face of South Dakota politics and strengthened the democratic process." *See* Doc. 137 at 4. They assert that the requested billing rates are the prevailing rates for similar work in their attorneys' respective communities and urge the Court to apply the out-of-state billing rates for attorneys McDonald and Pevar, which are higher than the rates of South Dakota counsel, due to the expertise of Mr. McDonald in voting rights cases and Mr. Pevar in civil rights cases, including voting rights. Although local counsel Brendan Johnson and Tim Billion typically bill at \$535 and \$485 per hour, respectively, for purposes of this motion they reduced their hourly rates to \$300 per hour for Mr. Johnson and \$250 per hour for Mr. Billion.

Plaintiffs also request an award of expenses totaling \$7,539.30, consisting of the following: (1) \$3,343.29 for Mr. Pevar's travel expenses, including airfare, lodging, meals and transportation costs incurred in travel to and from depositions in May 2017 and trial in February 2018; (2) \$2,414.02 for Mr. McDonald's travel expenses, including airfare, hotel and taxi to and from trial in February 2018; and (3) \$400 for the filing fee, \$100 for the pro hoc vice fee and \$1,281.99 for transcripts.

Defendants oppose the amount of Plaintiffs' fee request, raising two main objections. First, they argue that the Court should apply the hourly billing rates in the South Dakota market. Second, Defendants contend that the Court should adjust the fee request downward to reflect duplicative, vague, excessive or otherwise unnecessary hours.

## 1. Reasonable Hourly Rate

The starting point for determining an award of attorney fees involves calculating the lodestar, which provides an initial estimate of the value of the attorney's service. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The lodestar is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* The reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of comparable skills, experience and reputation. *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

In determining the reasonable hourly rate for the relevant legal community, courts typically consider the ordinary rate for similar work in the community in which the case is litigated. *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001). However, courts have approved the use of rates outside of the relevant legal community in certain circumstances, such as when a plaintiff is unable, despite good faith efforts, to find local counsel willing and capable of providing representation, *id.* (citing *Avalon Cinema Corp. v. Thompson*, 689 F.2d 137, 140 (8th Cir. 1982) (en banc)), or where out-of-area counsel has particular expertise in an area of the law, *see Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014) (affirming district court's application of a non-local rate primarily due to plaintiff's inability, in civil rights case, to find competent legal counsel in local community, as well as the attorneys' expertise in First Amendment litigation); *Planned Parenthood, Sioux Falls Clinic v. Miller*, 70 F.3d 517, 519 (8th Cir. 1995) (affirming the use of a non-local prevailing rate where counsel had expertise in the area of reproductive rights).

In support of using out-of-state billing rates here, Plaintiffs submitted a declaration of Joy Howe, one of the plaintiffs in this action, stating she contacted at least ten attorneys throughout South Dakota in 2014, and none would take her case even though she was willing to pay them, Doc. 140, a declaration of Bob Newland, one of the plaintiffs in this case, representing that it is unlikely he could have found an attorney in the local community to take this case, doc. 141, and a declaration of Brendan Johnson testifying that he would not have taken this case without the assistance of the ACLU, he is unaware of any South Dakota attorney who has the expertise of Mr. Pevar and Mr. McDonald in voting rights cases, and it was reasonable for Plaintiffs to seek out-of-state counsel, doc. 145. Plaintiffs have shown that, due to the complexity and the specialized nature of this case, an attorney with the required skills more than likely was not available locally.

Defendants counter with Affidavits of Reed Rasmussen, an experienced South Dakota trial attorney. *See* Docs. 153 and 154. Mr. Rasmussen is aware of one lawyer in South Dakota who has handled a voting rights act case. Plaintiffs point out that the lawyer identified by Mr. Rasmussen represented defendants but not plaintiffs in a voting rights act case, and that Defendants have failed to identify any local attorney who has taken, or who likely would take a voting rights case where they would need to sue the State, front the expenses and get paid only if they prevailed in the lawsuit. Plaintiffs' point is well-taken. Even if it is possible that the one lawyer identified by Mr. Rasmussen would have represented Plaintiffs in this case, it is too much to expect the plaintiffs, lay people, to find the one attorney in South Dakota who might have taken the case, but then again might not have

4

taken the case, especially considering the time and expense involved in aggressively pursuing the claims. Simply put, it was appropriate for Plaintiffs to seek counsel outside of South Dakota and from leaders in the field of voting rights litigation.

The next question is the appropriate hourly billing rate for Mr. McDonald and Mr. Pevar. The party seeking a fee award is responsible for providing evidence of the rate claimed. *See Wheeler v. Mo. Highway & Transp. Comm'n*, 348 F.3d 744, 754 (8th Cir. 2003).

Plaintiffs urge an hourly rate of $600 for Mr. McDonald. Mr. McDonald's work before this Court, and his declaration filed in this case, doc. 143, show that he continues to be one of the preeminent voting rights attorneys in the United States with extensive experience in voting rights litigation. In his declaration, McDonald cites three voting rights cases where the district courts, including this Court, awarded him $400 per hour in 2005, 2006 and 2008. *See* Doc. 143 at ¶ 6. McDonald asserts that those rates were "lower than the rate I presently seek and lower than the rate I am presently entitled to." *Id.* Citing to a 2013 survey of hourly rates charged by attorneys in the Atlanta area, McDonald and Plaintiffs contend that the $600 rate requested here is equal to, if not lower than, rates charged by attorneys possessing comparable years of experience in Atlanta *Id.* McDonald also relies on the "Laffey Matrix," in support of his request for a $600 hourly rate. *Id.*

Defendants submit that as recently as 2015, McDonald's requested rate in a voting rights act case was $450 per hour. *See Montes v. City of Yakima*, 2015 WL 11120966, *2 (E.D. Wash. June 19, 2015). This was a $25 increase from 2014 when he received $425 per hour in *Jackson v. Board of Trustees of Wolf Point, Montana*, 2014 WL 1794551, *4 (D. Mont. April 21, 2014). Defendants request that, if the Court awards non-forum rates to Mr. McDonald, it base the award on the rate of $450 per hour. *See* Doc. 151 at 8 n.2.

Considering all of the evidence in support of McDonald's claimed rate and the evidence offered by Defendants to support a lower rate, the Court finds the appropriate billing rate for Mr. McDonald in this case is $500 per hour.

For Mr. Pevar, Plaintiffs request a rate of $500 per hour, but they offer neither the declarations of other attorneys in the Hartford, Connecticut area nor attorneys' fee awards in similar cases as support for the reasonableness of this rate. Instead, Plaintiffs cite three Connecticut district

court cases awarding various attorneys $500 per hour in 2010, 2014 and 2017.[2] In two of the cases cited by Plaintiffs, the same lawyer received the $500 rate. Attorney John R. Williams received a $500 hourly rate in 2010 in *Muhammed v. Martoccio*, 2010 WL 3718560 (D. Conn. Sept. 13, 2010), and again in 2017 in *Rinaldi v. Laird*, 2017 WL 2616921 (D. Conn. June 16, 2017). But in a 2011 case not cited by Plaintiffs, Mr. Williams received $400 per hour. *See Vereen v. Siegler*, 2011 WL 2457534, at *2-3 (D. Conn. June 16, 2011). The court in *Vereen* reviewed a survey of cases involving attorney fee awards for Mr. Williams and found only one as high as $500 – *Muhammed*. The *Vereen* court noted that Mr. Williams' fee was uncontested in the *Muhammed* case. The court in *Rinaldi* relied on *Muhammed* to award Mr. William $500 an hour in that case. *See Rinaldi*, 2017 WL 2616921, at * 2. The cases show a variance in billing rates awarded for the same lawyer in the same market in Connecticut.

Plaintiffs point to three voting rights cases Mr. Pevar worked on in 1979, 1980 and 1984, but they do not talk about the hourly rate Mr. Pevar was paid. In fact, neither side cites any cases approving an hourly rate for Mr. Pevar. Mr. Pevar has an impressive background having filed more than 175 civil rights cases since graduating from the University of Virginia School of Law 47 years ago, arguing one case in the United States Supreme Court, more than thirty appeals in three different United States Courts of Appeals, and numerous cases in other state and federal courts. He was lead counsel in *Libertarian Party v. Kundert*, 579 F. Supp. 735 (D.S.D. 1984). Mr. Pevar's extensive knowledge and experience in the area of civil rights is beyond question. There is not a comparable local lawyer and, therefore, a rate higher than the prevailing rates in South Dakota is appropriate. But Plaintiffs have not provided evidence to support the $500 per hour rate claimed. The Court finds that, in this case, an hourly rate of $400 for Mr. Pevar is reasonable. *See, e.g., Vereen v. Siegler*, 2011 WL 2457534, at *3 (D. Conn. June 16, 2011) (awarding civil rights attorney Williams, with forty-three years of experience, an hourly rate of $400 and his associate attorney a rate of $250 per hour).

---

[2] The *Wells Fargo* case sheds no light on the issue because the rate was found presumptively reasonable based on Wells Fargo's agreement to pay their lawyers that rate whether or not they won the case. *See Wells Fargo Bank, NA v. Konover*, 2014 WL 3908596, at *5 (D. Conn. Aug. 8, 2014) (holding that "when a sophisticated client pays attorneys' fees that it does not know it will necessarily recover, the rate paid is presumptively reasonable").

## 2. Reasonable Work

Defendants first argue that it was unreasonable to have both Mr. McDonald and Mr. Pevar work on this case and that the Court should decline to award any of Mr. McDonald's fees. The Court disagrees.[3] Given the complexity of the constitutional ballot access issues in this case, Plaintiffs' employment of more than one lawyer with experience in that area was a reasonable tactic, and the fact that both lawyers sometimes collaborated on an issue or worked on the same task does not necessarily constitute duplicative or unnecessary billing. Effective preparation and presentation of a case often involves teamwork on a single issue. The tenacity of Defendants' defense likewise undermines their argument that the work of both lawyers for Plaintiffs was unnecessary in their attempts to change the unconstitutional law that Defendants fought so hard to keep.

Alternatively, Defendants ask the Court to strike all of Mr. Pevar and Mr. McDonald's time entries that are redundant, excessive, or otherwise unnecessary. Defendants attached copies of the highlighted time entries that they believe meet this criteria to the Affidavit of Jennifer L. Van Anne. *See* Doc. 152. In their brief, Defendants reproduce examples of entries that they believe exemplify work that did not require the attention of multiple lawyers. *See* Doc. 151 at 10-14.

"A court may reduce attorney hours, and consequently fees, for inefficiency or duplication of services in cases where more than one attorney is used." *A.J. by L.B. v. Kierst*, 56 F.3d 849, 864 (8th Cir. 1995). The Court agrees that some of the tasks performed by Plaintiffs' lawyers were unnecessarily duplicative or redundant and that some reduction in the hours billed is warranted. Rather than recite the Court's analysis of the billing entries line-by-line, the Court will instead reduce Mr. McDonald's and Mr. Pevar's submitted hours by 10%, an amount which fully and fairly accounts for the inefficiencies and duplications in their billing records. *See Kline v. City of Kansas City, Mo. Fire Dept.*, 245 F.3d 707, 709 (8th Cir. 2001) (affirming district court's reduction of fees on percentage basis to account for "overlawyering").

Next, Defendants ask the Court to deduct time spent by Plaintiffs' counsel pre and post-litigation. Specifically, Defendants object to Plaintiffs' fee requests for Mr. Pevar's time entries from January through March of 2015 related to the ACLU's pre-litigation efforts regarding SB 69, as well as Mr. Pevar's time entries after this Court's February 21, 2018 Memorandum Opinion related to the

---

[3] The Court notes that Defendants are represented by multiple lawyers in this case.

ACLU's post-litigation lobbying efforts regarding the amendments to HB 1286. Because Mr. Pevar's work was needed to achieve the favorable result in this litigation, all of those fees are recoverable.[4]

Finally, the Court rejects Defendants' objection to paying some of Mr. McDonald's fees based on his descriptions of e-mails and phone calls. While some of McDonald's time entries were not as specific as they could have been, there is sufficient detail to show that he spent the time as indicated even if the tasks undertaken were not always fully described. In addition, while some lawyers charge a minimum of a tenth of an hour (.10), there is no requirement for that level of detail, and McDonald's fee award will not be reduced for charging a minimum of a quarter hour (.25) for any work he performs. The Court declines to make a percentage reduction to McDonald's fee award on this basis.

Plaintiffs request additional compensation for the time Mr. Pevar and Mr. McDonald spent responding to Defendants' challenges to the fee claim.[5] Such fees are recoverable. *See, e.g., Jones v. MacMillan Bloedel Containers, Inc.*, 685 F.2d 236, 239 (8th Cir. 1982) ("The attorneys for the plaintiffs have also requested an amount for services performed in litigating the attorney's fee claim in the district court and on appeal. In accordance with the practice of other circuits, we hold that the plaintiffs' attorneys are entitled to such compensation."). The Court finds the time counsel devoted to Defendants' objections to their fee request is reasonable, and the Court will add 29 hours for Mr. Pevar and 10.25 hours for Mr. McDonald to the lodestar.

Applying all of the reasoning discussed above, the lodestar in this case is:

| Counsel | Hours | Rate | Fees |
|---|---|---|---|
| Laughlin McDonald | 412.6 | $500 | $206,300.00 |
| Stephen Pevar | 867.2 | $400 | $346,880.00 |
| Brendan Johnson | 136.8 | $300 | $41,040.00 |
| Tim Billion | 71.3 | $250 | $17,825.00 |
| | | **TOTAL** | **$612,045.00** |

---

[4] The difficulties encountered in securing legislation consistent with this Court's February 21, 2018 Memorandum Opinion are described in Plaintiffs' Brief and will not be repeated here. *See* Doc. 137 at 10-11.

[5] Mr. Pevar spent an additional 29.0 hours on the fee claim and Mr. McDonald spent 10.25 more hours. *See* Docs. 160 and 161.

### 3. Downward Adjustment of Lodestar

After the Court determines the lodestar, it may adjust the figure upward or downward, after taking into account various considerations, including the most important factor—the results obtained. *Hensley*, 461 U.S. at 434. The following are some of the factors that courts may consider:

> (1) the time and labor involved; (2) the novelty and difficulty of the question (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 430 n. 3 (citing the "*Johnson* factors" set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)). Because the lodestar amount represents a reasonable fee, a court may increase that amount only in "rare and exceptional cases." *Forshee v. Waterloo Indus., Inc.*, 178 F.3d 527, 532 (8th Cir. 1999) (citing *Pa. v. Del. Valley Citizens' Counsel for Clean Air*, 478 U.S. 546, 565 (1986)).

Defendants argue the lodestar should be adjusted downward based on some of the *Johnson* factors such as time and labor expended, novelty and difficulty of the questions raised, skill required, and amount in controversy. The Court disagrees. The Court has reviewed the factors identified in *Johnson*, and finds no basis to adjust the lodestar upward or downward based on those factors. Plaintiffs' counsel, possessing exceptional experience, good reputations and strong abilities, obtained an excellent result in a contentious and complex case.

### 4. Travel Expenses for McDonald

Section 10310(e) of the Voting Rights Act permits the Court to award reasonable litigation expenses to prevailing parties. The only objection Defendants have to the expenses and costs claimed by Plaintiffs is to the travel expenses for Mr. McDonald. This is based on Defendants' belief that Plaintiff did not need both lawyers. As indicated above, the Court disagrees. The duplicative fees have been deducted from the award. The Court finds that Mr. McDonald's travel expenses are recoverable. Accordingly,

IT IS ORDERED that Plaintiffs' Motion for Attorney Fees and Expenses, doc. 136, is granted in part and denied in part. Plaintiffs are awarded $612,045.00 in fees and $7,539.30 in expenses.

Dated this 2nd day of October, 2018.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK

BY: _____
DEPUTY